**NEW ENGLAND MUT. LIFE INS. CO. v. HARVEY et al.**

**Civ. A. No. 7530.**

United States District Court
D. Massachusetts.

Feb. 8, 1949.

John Barker, Jr., and Vincent V. R. Booth, both of Boston, Mass., for plaintiff.

Gardner W. Russell, of Boston, Mass., for defendant Kenneth A. Harvey, Jr. and Richardson B. Harvey.

Neil Leonard, and Bingham, Dana & Gould, all of Boston, Mass., for defendants Anne Harvey Trainer and Ruth Harvey Stead.

FORD, District Judge.

This is an interpleader suit brought by New England Mutual Life Insurance Company (hereinafter referred to as the Company) under the provisions of Sec. 24(26) of the Judicial Code, 28 U.S.C.A. § 41(26), as amended [now §§ 1335, 1397, 2361], to determine the persons entitled to be paid the amount due from the Company under Income Certificate No. 2798 issued to the late Anna Sherlock Harvey. The claimants are, on the one hand, two daughters of Mrs. Harvey, Anne Harvey Trainer and Ruth Harvey Stead, and, on the other hand, her two grandsons, Kenneth A. Harvey, Jr. and Richardson B. Harvey, children of her son, Kenneth A. Harvey. Ruth Harvey Stead is a citizen of Connecticut, the other claimants are all citizens and residents of Massachusetts.

The facts of the case as I find them from the evidence are as follows:

Income Certificate No. 2798, issued to Mrs. Harvey by the plaintiff Company on June 25, 1934 sets forth the terms of an agreement between them on that date. Under this agreement the Company agreed to retain the sum of $11,090.60 which had become due to Mrs. Harvey as beneficiary of two life insurance policies on the life of her deceased husband, and to pay her in quarterly instalments interest on the sum retained at 3% per annum plus surplus interest earned by the Company. She reserved the right, upon the giving of thirty days notice in writing, to withdraw on any quarterly payment day either the whole sum or parts thereof in amounts of not less than fifty dollars.

At the death of Mrs. Harvey the amount then held by the Company was to be paid to her daughter, Anne Harvey Trainer, if living, otherwise to the daughter's surviving issue, if any, otherwise to the executors or administrators of Mrs. Harvey. Mrs. Harvey reserved the right "to change or revoke the appointment of said daughter and said issue as Contingent Payees, upon due request made in writing and presentation of this Certificate for endorsement."

In the exercise of this reserved right Mrs. Harvey thereafter changed the provisions for payment at her death by written request on a form provided by the Company, signed by her on June 23, 1941. The Income Certificate was presented to the Company which endorsed this change thereon on June 24, 1941, and on June 25, 1941 mailed the endorsed Certificate back to Mrs. Harvey. Under the changed provisions the amount held by the Company at the death of Mrs. Harvey was payable in equal shares per stirpes to such of her daughters, Anne Harvey Trainer and Ruth Harvey Stead, as may be living, and to the so living issue of either or both of said daughters who may be deceased, but if none, then to the executors or administrators of Mrs. Harvey. Mrs. Harvey still reserved the right to change the beneficiaries or the mode of settlement to them "upon due request in

writing and presentation of the Certificate for endorsement."

In the Spring of 1942, according to the testimony of Kenneth A. Harvey, Mrs. Harvey expressed to her son Kenneth A. Harvey an intention of leaving money from the insurance left her by her husband to send Kenneth's sons to college, and requested him to obtain the necessary papers from the insurance company so that she could make the change of beneficiaries. At his request the Company prepared a request for change under which Kenneth's sons were designated as beneficiaries under Income Certificate 2798 and by which Mrs. Harvey would have relinquished her rights to withdraw any part of the proceeds or to make any further change of beneficiary. This was never shown to her, but, later again at the request of Kenneth, a form was prepared for him under which his two sons, Kenneth A. Harvey, Jr., and Richardson B. Harvey, were named as beneficiaries and the right to change the beneficiaries was still reserved. He gave this to his mother, and, on June 9, 1942, it was received by the Company, signed by Mrs. Harvey. The Certificate was not presented to the Company for endorsement either at this time nor at any subsequent time during Mrs. Harvey's life. The Company on June 11, 1942 in a letter to Kenneth Harvey informed him that the Certificate must be furnished for endorsement. He discussed this with his mother while visiting her during the Summer of 1942. She said she would look for the Certificate, and, on that occasion, he helped her to search her desk for it, but it was not found there and Mrs. Harvey knew it was not there.

Kenneth Harvey then wrote to the Company that his mother had lost the Certificate and requested a lost certificate form for her to sign. The Company informed him that it would be necessary to furnish a bond to save the Company harmless from claims of other persons which might arise, the bond to be signed by Mrs. Harvey and her two daughters, previously designated as beneficiaries, and by two sureties. The Company furnished a bond to be signed and he delivered it to his mother, telling her it must be signed if the Certificate were not found. She never returned any executed bond to the Company, nor were her two daughters ever asked by anyone to sign the bond. Late in 1942, when Kenneth asked her if she had found the Certificate, according to his testimony, she told him that everything was "fixed up." It is significant that she said nothing further about the Certificate she knew was at the bank, as appears later. It seems evident she made this statement knowingly and with an intention to circumvent any further pressure on the part of Kenneth for a change of beneficiaries that would include his two sons.

Mrs. Harvey died October 14, 1947. When her safe deposit box in the Wellesley Trust Company was opened by her executors on January 7, 1948, the original Income Certificate No. 2798 was found in it. Since June 25, 1941, when the Company mailed this certificate to her, until her death, she had visited the box several times each year. No one else during that period had access to the box alone except for one visit by her daughter, Mrs. Trainer, who opened the box with her mother's authorization on September 5, 1947 to obtain papers which Mrs. Harvey wished to look at.

Until the time of her death Mrs. Harvey remained alert and intelligent, capable of understanding and handling her affairs, and of exercising her own independent judgment in regard to them. During this period she frequently told a neighbor that her son Kenneth was urging her to sign papers in regard to the disposition of her property which she did not wish to sign, and that she did not worry about Kenneth's sons because their maternal grandfather would provide for them.

■ From these facts it is fair to infer, and I find that Mrs. Harvey without question knew, that a surrender of the Income Certificate for endorsement was required by the Company in order to complete the change of beneficiary, that from June, 1941, until her death this Certificate was not lost by any means but was knowingly kept by her in her safe deposit box at the Wellesley Trust Company, and that she did not intend to complete any effective change by which her grandsons would replace her daughters as beneficiaries of the Certificate. Proof of this fact is definitely found in

Mrs. Harvey's statement to Kenneth A. Harvey, her son, that she had everything "fixed up" when, as a matter of fact, she knew she had not.

But even if I were to find, as I do not, that Mrs. Harvey was unaware of the location of the Certificate, and that she intended to change the designation of the beneficiaries and believed she had done so, it must still be held that what she did here was insufficient to constitute an effective change of beneficiary. The courts of Massachusetts, in considering the effect of a failure to comply with a requirement in an insurance contract that the policy must be presented to the insurer for endorsement thereon of any requested change of beneficiary in order to make such change effective, have held that such a requirement in the contract must be substantially complied with. Absolutely strict compliance is not required so that a change will not be defeated by the mere failure of the officers of the insurance company to perform the ministerial act of making the endorsement on a policy presented to it. Kochanek v. Prudential Insurance Company of America, 262 Mass. 174, 159 N.E. 520. But the insured who desires to change the beneficiary must do all in his power to effect the change. Acacia Mutual Life Insurance Co. v. Feinberg, 318 Mass. 246, 61 N.E.2d 122; Henderson v. Adams, 308 Mass. 333, 32 N.E.2d 295; Goldman v. Moses, 287 Mass. 393, 191 N.E. 873; Resnek v. Mutual Life Insurance Company of New York, 286 Mass. 305, 190 N.E. 603.

The facts in the present case are closely similar to those in French v. Provident Savings Life Assurance Society of New York, 205 Mass. 424, 91 N.E. 577. There the insured signed and acknowledged the usual form for change of beneficiary, but was unable to find the policy on the day the form was delivered to the company. The company mailed to her a blank certificate of lost policy to be filled out. She had not done this when she died about three months later. It was held that what she had done amounted only to an incomplete attempt to change the beneficiary "which falls so far short of complying with the terms of the contract as to be of no effect." 205 Mass. at page 428, 91 N.E. at page 578.

Further, even if this court found that when Mrs. Harvey signed and sent to the Company on June 9, 1942 the form naming the grandsons as beneficiaries she intended at that time to change the beneficiaries, yet on the facts here I find the evidence showed she abandoned that intent, especially in the light of the fact that her son Kenneth A. Harvey was importuning her at intervals to do something she did not wish to do. Mrs. Harvey, not only from her previous experience in making a change of beneficiary, but also from specific notice in this instance, was familiar with the Company's requirement as to surrender of the Certificate, and had received its proposal to accept a bond in lieu of the Certificate. She knew that the Company did not regard the change as having been effectively completed. Yet for five years she took no step whatsoever in the direction of effectuating the change. Failure over a much shorter period of time (one year) to take any action has been held to be "nearly conclusive of an abandonment of intention to change the named beneficiary". Kochanek v. Prudential Insurance Company of America, supra, 262 Mass. at page 179, 159 N.E. at page 522.

There remains a question of whether the contract involved here is a life insurance contract to be governed by the rules enunciated in the above cases dealing with life insurance policies. Although both sides have raised this issue in their briefs, they have argued their case also on the basis that this should be taken as at least so closely analogous to a life insurance policy as to be governed by the same rules, and this seems to me to be the proper solution of the question. It is true that under the agreement embodied in the Certificate the Company took no risk on the life of Mrs. Harvey, so that strictly this was not an insurance contract. Mass. G.L. (Ter.Ed.) c. 175, sec. 2. But it was in effect a supplementary agreement establishing a method by which the Company was to pay the amounts it owed as proceeds of policies of insurance on the life of Mrs. Harvey's husband, either to her as the ben-

eficiary named in those policies or to contingent beneficiaries named·under the provisions of the Certificate. From the standpoint of the relationship of Mrs. Harvey to the beneficiaries of the Certificate, there was no substantial difference between the situation here and that which would be presented had Mrs. Harvey been arranging for the disposition of the proceeds of a paid-up policy of insurance on her life. And the provisions of the Certificate as to change of beneficiary (and others, such as those relating to assignments) use the familiar language of like provisions in insurance policies, with no indication that the parties intended them to have any different interpretation or effect than that usually given to them.

Moreover, the rule here applied is not one peculiar to insurance contracts alone, but merely the particular application of a general rule applicable to all contracts. One party to a contract cannot change the obligation of the other party to the contract by unilateral action. Such a change requires the mutual consent of the parties. And where one party gives its consent in advance to changes in its obligation to be made only by the method specified in the contract, its obligations remain unaffected by attempted unilateral changes which do not conform to the method laid down.

The claimant grandsons have urged that this case should be treated as if the Company here were in the position of a trustee. Such an arrangement as this does not constitute the establishment of a trust, although in some cases it has been suggested that the insurance company might properly be treated as a trustee, Scott, Trusts, Sec. 87.1. However, even if I regarded this as a case where the settlor of a trust is exercising a reserved right to alter the terms of the trust, I should still have to hold that the attempt was ineffective where it failed to conform to the requirements set out in the trust instrument. National Shawmut Bank v. Joy, 315 Mass. 457, 462, 53 N.E.2d 113. Scott, Trusts, Secs. 330.8, 331. Restatement, Trusts, Sec. 331d.

Consequently, I conclude that the distribution of the amount held by the plaintiff insurance company under Income Certificate No. 2798 at the death of Mrs. Harvey should be made in accordance with the directions given in the request for change of beneficiary made by her on June 23, 1941. Anne Harvey Trainer and Ruth Harvey Stead are entitled to have this fund, now on deposit with the court, paid to them in equal shares, and judgment will be entered accordingly.