RICHARD J. VITA vs. BERMAN, DeVALERIO & PEASE, LLP
& others.[1]

No. 11-P-504.

Suffolk. January 9, 2012. - May 17, 2012.

Present: KANTROWITZ, TRAINOR, & HANLON, JJ.

*Contract,* Implied, Performance and breach, Damages. *Damages,* Breach of
contract. *Consumer Protection Act,* Unfair or deceptive act. *Practice, Civil,*
Directed verdict, Attorney's fees.

In a civil action brought in the Superior Court seeking, inter alia, damages on
a claim of breach of contract arising from an unpaid referral fee allegedly
owed to the plaintiff attorney by the defendant law firm and attorneys, the
judge properly denied the defendants' motion for a directed verdict, where,
although the parties had no written document outlining the payment of
referral fees, an implied contract could have been found to exist from the
evidence of the parties' conduct and relations during the course of their
long-time business relationship. [754-755]

In a civil action brought in the Superior Court alleging, inter alia, a violation
of G. L. c. 93A, § 11, arising from an unpaid referral fee allegedly owed
to the plaintiff attorney by the defendant law firm and attorneys, there was
no error in the judge's conclusion that the defendants' acts were attempts
to pressure the plaintiff to accept a fee less than the amount agreed to by
the parties, and as such were unfair and deceptive. [755-756]

CIVIL ACTION commenced in the Superior Court Department on
September 28, 2007.

The case was tried before *Thomas E. Connolly,* J.

*Thomas J. Carey, Jr. (Michael B. Galvin* with him) for the
defendants.

*Joseph D. Steinfield (Kristin M. Knuuttila* with him) for the
plaintiff.

HANLON, J. Following a bifurcated trial in the Superior Court,
a jury awarded the plaintiff, Richard Vita, $1,008,305 in dam-

---

[1]Norman Berman, Jeffrey C. Block, Glen DeValerio, Kathleen M. Donovan-
Maher, Peter A. Pease, and Leslie R. Stern.

ages on his breach of contract claim stemming from an unpaid referral fee.[2] Vita's G. L. c. 93A, § 11, claim was tried to the judge, who found for Vita and doubled the damages. The defendants, the law firm of Berman, DeValerio & Pease, LLP, and certain individually-named partners (collectively, BDP), appeal from the amended judgment entered in favor of Vita. BDP contends on appeal that its motion for a directed verdict was erroneously denied, and Vita's contract claim should not have been submitted to the jury as there was insufficient evidence of a contract between the parties. BDP also argues that the judge mistakenly found that it had violated G. L. c. 93A, § 11.[3] We affirm.

*Background.* There was evidence of the following facts. Vita is an attorney with a solo practice focusing on criminal litigation. BDP specializes primarily in class action securities litigation and maintains offices in Boston, California, and Florida. The relationship between the parties began in 1993 when Vita first contacted Glen DeValerio, a partner at BDP, on behalf of certain of Vita's family members who had suffered some stock losses. Vita and DeValerio later met for lunch to discuss future referrals. At their initial meeting, DeValerio suggested an ongoing arrangement whereby Vita, who had many contacts in the financial securities field, would refer potential class action plaintiffs to BDP. DeValerio stated that the arrangement would be "profitable for [Vita] as well as [DeValerio's] firm." Thereafter, Vita and BDP entered into a business relationship: BDP paid Vita a fee for class action plaintiffs whom Vita referred and BDP accepted as clients for litigation. Vita was paid when BDP received its attorney's fees in each case.[4]

At the beginning, Vita's referral fee was in the range of ten to fifteen percent, whether BDP's attorney's fees were large or small; after several successful referrals, the fee was in some

---

[2] The judge reduced the jury award by $400,000 to account for the amount the defendants had previously paid to Vita.

[3] BDP does not appeal the denial of its G. L. c. 93A counterclaim or its request for attorney's fees.

[4] The record does not reveal whether any of the plaintiffs referred to BDP signed a consent to a fee sharing arrangement between Vita and BDP. See, e.g., *Saggese* v. *Kelley*, 445 Mass. 434, 439-443 (2005).

instances increased to twenty percent. Once a referral was made, Vita did not participate further in the litigation.

DeValerio was Vita's initial contact person at BDP; sometime in 1998, Norman Berman took over as the firm liaison. However, other partners at BDP would sometimes call Vita directly about new cases. As the business relationship continued, the number of Vita's referrals grew significantly. For the purpose of more easily tracking the referrals, Berman created and continuously updated a spreadsheet containing all of Vita's referrals. Berman and Vita met regularly, approximately every six weeks, to discuss the status of the referred cases; this continued even after Vita stopped providing referrals.

In February, 1998, at the request of BDP partner Jeffrey Block, Vita referred Robert Hillger as a potential plaintiff for a class action suit against Phillip Services Corporation (PSC). BDP qualified Hillger as a plaintiff and filed a securities fraud suit against PSC in the United States District Court for the Southern District of New York on February 5, 1998, with Hillger as the sole named plaintiff. On that same day, BDP issued a press release seeking other PSC investors to join in the class action. Under the normal practice, when BDP accepted Hillger as a client, Vita's referral obligation was satisfied, thus triggering BDP's duty to pay him if BDP was awarded attorney's fees in the litigation. In fact, on the same day the case was filed, the PSC case was added to BDP's master list of Vita's referrals.

As a result of the press release, more than fifty investors replied to BDP expressing interest in joining the suit; one such investor was Vincent Ditrano.[5] After commencing several suits on behalf of these plaintiffs, the cases were consolidated. BDP and Lowey Dannenberg, a local New York firm, were appointed as lead counsel, and the two firms selected Hillger as one of the lead plaintiffs in the consolidated and amended class action complaint filed on September 11, 1998.

In late 1998, the relationship between Vita and BDP began to

---

[5]Hillger and Vincent Ditrano were purchasers of PSC stock options. The remaining plaintiffs included in the litigation were purchasers of shares of stock. BDP filed a complaint on behalf of Ditrano and included Vita's name on the complaint as one of the counsel of record even though he had not made that referral.

deteriorate because of disputes relating to the payment of fees for other referrals made by Vita. In an attempt to resolve the conflict, Vita met with DeValerio and Berman separately on several occasions. The conflict over fees continued, however, and Vita stopped referring litigants to BDP sometime toward the end of 1999.

As a follow-up to a meeting held on March 23, 2000, and in an attempt to "close the book on both 1998 and 1999" fees, Berman sent Vita a letter dated March 30, 2000. In the letter, Berman recited certain proposed payments on several named cases,[6] and stated, "In addition to our 10% referral, we agreed to evaluate the total relationship for 1999 after the close of the year."[7] The letter also informed Vita that for "existing cases, we will continue to pay you a 10% referral fee subject to adjustment after the close of the year."[8] According to BDP's referral list, PSC was an existing case at the time the March 30 letter was prepared and sent.

In March, 2002, as the result of a pending PSC bankruptcy proceeding, BDP received a payment of $151,313.39 in attorney's fees for the PSC litigation. From this award BDP paid Vita $15,131.34, representing, as indicated on BDP's payment invoice, the "Agreed upon Co-Counsel Percentage" of ten percent. On June 30, 2004, a motion for class certification in the PSC litigation was filed; it failed to include Hillger or any option traders as named plaintiffs. Block, as lead counsel, testified that BDP and Lowey Dannenberg had the discretion to determine the members of the class and chose to eliminate Hillger as a named plaintiff in the PSC lawsuit. Block further testi-

---

[6]Specifically, the letter proposed a ten percent referral fee for Vita's referral in a case Berman called "Valuejet," and a fifteen percent referral fee for two others ("National Life of Vermont" and "Vmark"). Further, according to Berman, BDP concluded that "an adjustment [was] warranted" for still another case ("Exide"). As a result, Vita was paid an "additional" referral fee for that case.

[7]Berman conceded at trial that no downward adjustment was ever made to referral fees paid to Vita after a year-end evaluation was conducted.

[8]Out of more than thirty cases for which Vita received a referral fee after Berman's March 30, 2000, letter, he received ten percent of BDP's attorney's fees, with one exception, the "Avant!" case, for which he received an additional premium above and beyond the ten percent.

fied that Hillger's removal was a "strategic decision" and not based on lack of standing or his failure to qualify as a plaintiff.

Hillger was not informed that he had been dropped as a plaintiff until 2006, more than two years later, even though he remained a client of BDP. Vita was not informed of Hillger's removal from the case until sometime in 2007, after BDP had received its attorney's fees as lead cocounsel in the case, and even though Berman and Vita had continued to meet regularly between 2004 and 2007 to discuss the status of Vita's active referrals. In addition, according to Berman, in July, 2005, when, at Vita's request, he sent a letter to New York cocounsel confirming that Vita had initially referred Hillger, it did not occur to him to tell Vita that Hillger had been removed. DeValerio admitted that BDP "could be faulted" for not notifying Vita about Hillger's removal from the litigation, and Berman admitted, "We messed up. We should have told him."

The PSC litigation settled in early 2007 for approximately $80 million. In April, 2007, BDP received $10,083,050 in attorney's fees, "plus a full reimbursement of their expenses."[9] Vita first learned of the settlement on May 2, 2007, from a cover letter Berman sent to him along with a check in the amount of $400,000, representing only four percent of BDP's recovery. Contrary to BDP's usual practice of including a calculation summary with the referral payment, this letter contained a minimal amount of information regarding the settlement: the letter was silent as to the total attorney's fees awarded or any calculation breakdown.[10] Although BDP's attorney's fees had exceeded its lodestar amount considerably, Berman informed

---

[9]BDP's portion of the combined "lodestar" amount submitted to the court by lead cocounsel was $7,638,968 plus an additional $857,985 in expenses, totaling $8,496,953. "[T]he 'lodestar method . . .' [is] an amount 'calculated by multiplying the number of hours reasonably spent on the case times a reasonable hourly rate.' " *School Comm. of Norton* v. *Massachusetts Commn. Against Discrimination*, 63 Mass. App. Ct. 839, 850 (2005), quoting from *Fontaine* v. *Ebtec Corp.* 415 Mass. 309, 324 (1993). Lead cocounsel were ultimately awarded total fees of $21 million, "rounded to reflect their approximate lodestar and a reward factor of 1.366."

[10]As appears from the record, it was BDP's regular practice to include with Vita's referral fee payment a calculation invoice showing the fee amount awarded to BDP and the amount of the "co-counsel payment" owed to Vita as the "Agreed upon Co-Counsel Percentage"; the cocounsel percentage was

Vita that the award was "significantly lower than we had requested."

In the letter, Berman explained the fee was based on the "unique circumstances of the case including its age, the size of the settlements, [and] [BDP's] extraordinary investment in costs and time seeing this case to its conclusion." At trial, Berman testified that even though BDP had "no contractual obligation" to pay Vita any amount for the case, BDP "picked [$400,000] because we felt it was a large enough number to avoid conflict and hopefully avoid litigation." DeValerio testified that the fee was set because there was "no continued relationship" with Vita, and "there was nothing to be gained by way of fostering the relationship."

The jury found that BDP's payment to Vita of only four percent of its awarded fees was a breach of contract.[11] A partial judgment entered on December 17, 2009, in the amount of $1,008,305; the judge then reduced the award to $608,305 to reflect the earlier $400,000 payment.[12]

On the G. L. c. 93A claim, the judge found that BDP had "engaged in unfair and deceptive conduct. BDP received an unusually favorable award in the PSC litigation, a case in which Vita had referred a class action plaintiff. For its own benefit, BDP withheld information from Vita about the events in the PSC litigation, about BDP's recovery in that case, and paid Vita only 4% of the attorney's fees it recovered in contravention of the parties' referral agreement. BDP's acts were attempts to pressure Vita to accept a fee less than the 10% agreed to by the

never less than ten percent. BDP changed the invoice format with the May 2, 2007, "Abercrombie" referral payment, which referenced a "referral percentage" of ten percent.

[11]The jury found in favor of BDP on Vita's breach of contract claims in connection with other referred cases, including the Lernout & Hauspie, Oxford Health, and Pegasystems litigations.

[12]A separate evidentiary hearing was held on Vita's G. L. c. 93A claim and request for declaratory judgment, pursuant to G. L. c. 231A, for the payment of referral fees in the Savings Bank Life Insurance (SBLI) and Metropolitan Life Insurance Company (MetLife II) cases. The judge found that BDP was obligated to pay Vita a ten percent referral fee within five business days of receipt of attorney's fees in the SBLI case. The judge did not grant declaratory relief to Vita in the MetLife II case because "evidence of [Vita's] oral agreement with [counsel in that case] is unpersuasive." These portions of the judgment are not disputed on appeal.

parties, and as such were unfair and deceptive pursuant to [G. L. c. 93A,] § 11." As a result, the judge found that the "actual damages" for which Vita could recover ($608,305) should be doubled.

*Discussion.* a. *Motion for directed verdict.* On review of the denial of a motion for directed verdict, we determine "whether the evidence, construed against the [defendants], justifies a verdict against [them]." *McCarthy* v. *Waltham,* 76 Mass. App. Ct. 554, 560 (2010), quoting from *O'Brien* v. *Pearson,* 449 Mass. 377, 383 (2007). We must "evaluate whether anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of [Vita]." *Ibid.,* quoting from *O'Brien, supra.*

Here, BDP claims there was insufficient evidence to establish that the parties had an agreement as to the payment of a ten percent referral fee for the PSC litigation. In BDP's view, the case should not have been submitted to the jury. We are not persuaded. Although the parties did not have a written document outlining the payment of referral fees, their agreement was clearly manifested through extensive correspondence and regular updating of BDP's referral list, generated during the course of their long-time business relationship. "In the absence of an express agreement, an implied contract may be inferred from (1) the conduct of the parties and (2) the relationship of the parties. An implied contract requires proof that there was a benefit to the defendant, that the plaintiff expected the defendant to pay for that benefit, and that the defendant expected, or a reasonable person should have expected, that he or she would have to pay for that benefit." (Citations omitted.) *T.F.* v. *B.L.,* 442 Mass. 522, 526-527 (2004). See *LiDonni, Inc.* v. *Hart,* 355 Mass. 580, 583 (1969) ("[A] contract implied in fact may be found to exist from the conduct and relations of the parties").

BDP argues that the evidence of a contract was only what it describes as a "twenty-three word snippet" from Berman's letter of March 30, 2000, and that those words are insufficient as a matter of law to establish the existence of a contract. On the contrary, the letter, taken together with the parties' conduct over several years, clearly demonstrates that Vita's referrals produced

a benefit for BDP, that Vita reasonably expected BDP to pay him for the referrals it accepted as plaintiffs, and that BDP expected that it would have to pay for the referrals. Further, over time, the percentage paid did not fall below ten percent. "[I]n an ordinary contract, where matters are left open, the court may imply terms either that are reasonable or that may be gathered from the subsequent course of performance." *Lawrence v. Cambridge*, 422 Mass. 406, 411 (1996). See Restatement (Second) of Contracts § 202(4) (1981) ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement").

At the outset of the relationship, Vita was told that the referral arrangement was going to be a profitable one for both parties. From the time he provided the first class action plaintiff in approximately 1994, until the resolution of a subsequent case ("Abercrombie & Fitch") in 2007, Vita never received a referral fee of less than ten percent of BDP's awarded attorney's fees, and occasionally he received a fee as high as twenty percent, including additional "premiums" for certain referrals. All of the cocounsel fee summaries generated by BDP between 1999 and 2005 indicate that the "Agreed upon Co-Counsel Percentage" was at least ten percent. Berman's March 30, 2000, letter to Vita confirmed that all "existing cases" would "continue" to be paid at the ten percent referral rate. Finally, the PSC litigation, with Hillger as lead plaintiff, was pending at the time of Berman's letter, as reflected on the referral list Berman maintained.

Taken together, these facts amply support the jury's conclusion that a contract existed between the parties and that BDP breached the contract when it unilaterally decided to award Vita only four percent, rather than the customary ten percent, of the PSC fees. The jury's award of damages in an amount equal to ten percent of the attorney's fees in the PSC class action clearly was warranted.

b. *Chapter 93A claim.* "Whether conduct is unfair or deceptive under G. L. c. 93A is a mixed question of law and fact. . . . [W]hen reviewing a trial judge's conclusion that particular

conduct was or was not unfair or deceptive, we review the judge's subsidiary findings of fact under the clearly erroneous standard, while reviewing de novo his ultimate conclusion of law." *Zabin* v. *Picciotto*, 73 Mass. App. Ct. 141, 170 (2008).

BDP argues that, even if it did breach a contract with Vita, this breach was no more than "a good faith dispute as to whether money is owed . . . [and] not the stuff of which a c. 93A claim is made." *Duclersaint* v. *Federal Natl. Mort. Assn.*, 427 Mass. 809, 814 (1998). We disagree. "[C]onduct 'in disregard of knowing contractual arrangements' and intended to secure benefits for the breaching party constitutes an unfair act or practice for c. 93A purposes." *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991), quoting from *Wang Labs., Inc.* v. *Business Incentives, Inc.*, 398 Mass. 854, 857 (1986). See *Zabin* v. *Picciotto*, 73 Mass. App. Ct. at 170 ("[W]hen the breaching party uses its failure to make payments as a wedge against the other party to gain advantages . . . the breaching party's conduct rise[s] to the level of an unfair trade practice under G. L. c. 93A").

"Unfairness acquires its character from the circumstances of each case." *Renovator's Supply, Inc.* v. *Sovereign Bank*, 72 Mass. App. Ct. 419, 429 (2008). Here, the underlying facts are not disputed, and the trial judge reasonably concluded that "BDP's acts were attempts to pressure Vita to accept a fee less than the 10% agreed to by the parties, and as such were unfair and deceptive pursuant to [G. L. c. 93A,] § 11." We see no error.

*Attorney's fees on appeal.* Vita has requested attorney's fees pursuant to G. L. c. 93, § 11, in connection with this appeal. See, e.g., *Stagecoach Transp., Inc.* v. *Shuttle, Inc.*, 50 Mass. App. Ct. 812, 823 (2001). He may submit an application for fees and costs, with supporting documentation, to this court within fourteen days of the date of the rescript. See *Fabre* v. *Walton*, 441 Mass. 9, 10-11 (2004). BDP shall have fourteen days thereafter to respond.

*Amended judgment affirmed.*