BRIGHT HORIZONS CHILDREN'S CENTERS, INC. *vs.*
STURTEVANT, INC.

No. 10-P-2210.

Plymouth. November 8, 2011. - September 26, 2012.

Present: BERRY, BROWN, & GRAINGER, JJ.

*Contract,* Lease of real estate, Performance and breach, Assignment. *Real Property,* Lease. *Assignment. Landlord and Tenant,* Assignment of lease.

In a civil action alleging breach of bargained-for covenants set forth in a commercial lease, the judge erred in denying the plaintiff's motion for a directed verdict, where the defendant, as a successor lessor, took by deed the real property subject to the pre-existing valid lease between the predecessor in interest and the plaintiff, notwithstanding the defendant's contention that an assignment and assumption agreement between the defendant and the original lessor had legally absolved the defendant of its obligations under the covenants, and where the plaintiff did not waive its right to enforce the covenants against the successor lessor; moreover, the defendant's effort to carve out the covenants in question from the obligations that it accepted as a result of its purchase of the real property gave rise to a plausible claim of a violation of G. L. c. 93A; finally, the judge's misapprehension of the governing principle of law led him to deliver an instruction to the jury that was legally erroneous and substantively prejudicial. [486-488]

CIVIL ACTION commenced in the Superior Court Department on April 11, 2006.

The case was tried before *Garry V. Inge,* J., and motions for judgment notwithstanding the verdict and for a new trial were heard by him.

*Douglas W. Salvesen* for the plaintiff.

*Joseph L. Bierwirth* for the defendant.

BROWN, J. This case centers on a web of bargained-for covenants set forth in a written commercial lease. The lease was made in August, 2004, by Bright Horizons Children's Centers, Inc. (Bright Horizons), as lessee, and 400 Longwater Realty,

LLC (Longwater), as lessor and owner of the subject real estate (property) located in the town of Norwell (town). Longwater was engaged in the business of real estate development.

The covenants had to do with the construction of a new building on the demised premises. The "lessor" agreed to construct the building's exterior shell — "base building" in the lease language — and substantially complete its construction work by October 15, 2005. The "lessee" agreed to do the fit-out work to render the building suitable for its intended use as a childcare facility. The lease expressly provided: "The covenants, agreements and conditions contained [herein] to be performed and observed by either party *shall be binding upon said party and its heirs, . . . successors and assigns* and shall inure to the benefit of the other party and its heirs, . . . successors and assigns" (emphasis added).

From its inception, the building project was marred by delays. On September 23, 2005, when the base building was far from substantially complete, Longwater conveyed all its interest in the property, including its reversion in the leasehold estate, by quitclaim deed, to Sturtevant, Inc. (Sturtevant), a local manufacturing firm, for $1.883 million. Sturtevant thus succeeded Longwater as the lessor. Thereafter, further delays ensued; ultimately, Bright Horizons performed portions of the base building work in addition to fit-out work. An occupancy permit was issued by the town in January, 2006.

Bright Horizons made written demand on Sturtevant for reimbursement of costs incurred in performing base building construction work. Bright Horizons also requested from Sturtevant payment of its "improvement allowance" as specified in the lease and rental credit for delays attributable to the late delivery of the base building.[1] Sturtevant refused. A trial was held in Superior Court where, prosecuting its contract and G. L.

---

[1]In connection with fit-out work performed by Bright Horizons, the lease required the lessor to pay a fixed sum ($12.50 per actual square foot) for tenant improvements completed on the leased premises, and $6,500 for fencing. The lessor was also required to grant the lessee a credit against rental payments (equivalent to one day's rent) for each day the demised premises remained incomplete until "commencement" of the lease term. See *Wesson* v. *Leone Enterprises, Inc.*, 437 Mass. 708, 721-722 (2002) (landlord's promise was a significant inducement to the tenant entering into the lease).

c. 93A claims, Bright Horizons alleged that Sturtevant had repudiated its construction-related covenants. Sturtevant denied liability. Sturtevant argued that a side agreement it entered into with Longwater — the "assignment and assumption" agreement — had legally absolved Sturtevant of any and all construction-related lease obligations owed to the lessee.[2] As an affirmative defense, Sturtevant asserted that Bright Horizons had impliedly waived and relinquished its rights under the lease covenants.

At the close of the evidence, the trial judge denied the parties' cross motions for a directed verdict. See Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974). Returning a special verdict, the jury found for Sturtevant on the contract claim; independently, the judge found no c. 93A violation. Judgment entered for Sturtevant on each count. The judge denied Bright Horizons's motions for a new trial and for a judgment notwithstanding the verdict. Bright Horizons appealed.

On appeal, Bright Horizons principally contends that the judge erred by failing to interpret and apply the unambiguous lease language to the undisputed facts. This error, Bright Horizons argues, recurred throughout the trial and, specifically, in the judge's jury charge and c. 93A decision. We agree. It is evident from the record that the case presented two major legal questions: (1) Applying its plain and unambiguous language, what rights were created and what obligations were imposed by the lease on the lessor and lessee? (2) What legal effect, if any, did the assignment and assumption agreement have on the lease? Those questions were for the judge, not the jury. The judge, by failing to answer those questions, caused the trial to proceed on an improper legal footing.

The simple answer, applying the lease language, is that the covenants that formed the basis of Bright Horizons's contract claim were fully enforceable against Sturtevant, as successor to Longwater. Sturtevant was responsible for any breach due to its action or inaction after purchasing the property on September

---

[2] As it did at trial, Sturtevant argues on appeal that the assignment and assumption agreement, to which Bright Horizons was not a party, had "carved out" from the lease the "construction and tenant improvement [payment] responsibilities from those obligations Sturtevant accepted as the new owner of the Property."

23, 2005. The assignment and assumption agreement was a nullity vis-à-vis Bright Horizons. Sturtevant did not offer an affirmative defense, sustainable under governing law, to the contract claim of Bright Horizons. The trial judge erred in denying Bright Horizons's motion for a directed verdict insofar as it requested that Sturtevant be found liable for breach of contract. There was insufficient proof as matter of law to allow a rational jury reasonably to infer otherwise, which is what such a motion is meant to test. See *McHoul, petitioner*, 445 Mass. 143, 157 (2005), cert. denied, 547 U.S. 1114 (2006).

*Standard of review.* We are guided by well-established review standards. "The interpretation of the terms of an unambiguous written lease is a matter of law for the court." *Great Atl. & Pac. Tea Co.* v. *Yanofsky*, 380 Mass. 326, 334 (1980). The meaning of a contract, "what promises it makes, what duties or obligation it imposes, is a question of law for the court." *Tri-City Concrete Co.* v. *A.L.A. Constr. Co.*, 343 Mass. 425, 427 (1962), quoting from *Smith* v. *Faulkner*, 12 Gray 251, 255 (1858). These are matters open to our de novo review.

The lease explicitly confirms that its makers had intended and agreed that it was an integrated contract, that is, a complete and final embodiment of the terms of their contract.[3] It follows as matter of law that parol evidence was not admissible to add to or vary the lease language. The foregoing fully frames the parties' legal contentions. No purpose would be served by cataloging the evidence admitted at trial, for the appeal is purely law and does not turn on any disputed fact issue.[4]

---

[3]The lease provides: "This Lease and the exhibits (including the material referred to thereon) attached hereto set forth all the covenants, promises, agreements, conditions and understandings between LESSOR and LESSEE concerning the Leased Premises and there are no covenants, promises, agreements, conditions, or understandings, either oral or written, between them other than are herein set forth. This Lease shall not be modified or amended in any manner except by an instrument in writing executed by the parties hereto."

[4]Sturtevant's affirmative defense of an implied waiver by Bright Horizons of its rights under the lease cannot be sustained as a matter of law given the fact that the lease is an integrated contract. No such waiver, or any form of a novation, could be found unless Bright Horizons had agreed to alter its rights under the lease in a written instrument that it had executed with Sturtevant. See note 3, *supra*. No such writing has been shown to exist. It is no answer to

*Discussion.* 1. *Lease.* A deed transfer of real property, subject to a leasehold estate, operates as matter of law as an assignment of the lease. This has long been the law. See *Burden* v. *Thayer,* 3 Met. 76, 77-78 (1841); *Noble* v. *Brooks,* 224 Mass. 288, 291 (1916); *Taylor* v. *Kennedy,* 228 Mass. 390, 394-395 (1917). The ancient rule, which has not lost any vitality in the Commonwealth, is in essence that a successor lessor, who takes by deed real property subject to a pre-existing valid lease, stands in the shoes of and has the same rights and duties under the lease as had been held by its predecessor. See *Leominster Gas Light Co.* v. *Hillery,* 197 Mass. 267, 269 (1908); *Judkins* v. *Charette,* 255 Mass. 76, 81 (1926). This lease law principle, of which Bright Horizons had timely advised the trial judge in its motion for a directed verdict, was ignored by the court. We need not plumb the complexities of lease covenants that run with the land, see *Jones* v. *Parker,* 163 Mass. 564, 568 (1895); *Carpenter* v. *Pocasset Mfg. Co.,* 180 Mass. 130, 133-134 (1901); *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 90-98 (1979), because the lease provides that "[t]he covenants, agreements and conditions" set forth in the lease, "to be performed and observed by either" the lessor or lessee, "shall be binding" upon each other's "successors and assigns." Bright Horizons did not waive its right to enforce the covenants against Longwater's successor, Sturtevant, because such a waiver would have to be set forth in a written instrument signed by Bright Horizons, which obviously does not exist here. Sometimes, "we need education in the obvious more than investigation of the obscure." O.W. Holmes, Collected Legal Papers 292-293 (1920).

The Sturtevant and Longwater assignment agreement also threw aside the black-letter law that one party to a contract cannot alter or modify the rights or duties of a counterparty by unilateral action. See *New England Mut. Life Ins. Co.* v. *Harvey,* 82 F. Supp. 702, 706 (D. Mass. 1949). Such a result demands the parties' mutual consent. *Ibid.* If, as here, the parties have defined the method in their contract to bring about any such change, an attempt to do so that does not "conform to the method laid down" by them is invalid. *Ibid.* That is precisely

sa this remains a factual issue, for nothing comes of it and it is immaterial to the legal questions on appeal.

what the Sturtevant and Longwater assignment and assumption agreement attempted to do: unilaterally alter and modify the lease terms, to the detriment of Bright Horizons, without Bright Horizons's consent. In short, the lease's integration provision forecloses Sturtevant's assertion that the assignment and assumption agreement, which was not executed by Bright Horizons, carved out the covenants in question from the obligations that Sturtevant "accepted" as a result of its purchase of the property. In addition, Sturtevant's effort to bring about such a result gives rise to a plausible claim alleging a violation of c. 93A. See *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 474 (1991); *Renovator's Supply, Inc.* v. *Sovereign Bank*, 72 Mass. App. Ct. 419, 429 (2008); *Vita* v. *Berman, DeValerio & Pease, LLP*, 81 Mass. App. Ct. 748, 756 (2012).

2. *Jury instruction.* The trial judge's misapprehension of the governing principle led him ultimately to deliver the following jury instruction, which had been requested by Sturtevant: "That point of law is that if you find that 400 Longwater Realty did not assign to Sturtevant the obligations that Bright Horizons alleges were breached, then you cannot find Sturtevant liable for breach of those obligations." Bright Horizons correctly argues that this instruction, delivered over its timely objections, was legally erroneous and substantially prejudicial.

"Putting the wrong questions is not likely to beget right answers even in law." *Vanston Bondholders Protective Comm.* v. *Green*, 329 U.S. 156, 170 (1946) (Frankfurter, J., concurring). The challenged instruction effectively forced the jury's hand to find that Sturtevant was not legally bound to honor its lease obligations insofar as they related to the base building project.[5] There was no dispute as to what the assignment and assumption agreement purported to provide for, that is, the exclusion of construction covenants from Sturtevant's lease obligations. The instruction, if followed to the letter, required the jury to find for Sturtevant. We must presume the jury followed this instruction

---

[5]The same error infected the trial judge's c. 93A decision, insofar as he had acted on the belief that Sturtevant could lawfully "cherry-pick" the lease obligations that it would agree to assume, as if this were a corporate asset purchase, along the lines of a de facto merger. See *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 359-362 (1997).

in returning their special verdict for Sturtevant. The instruction misdirected the jury, substantially prejudiced the rights of Bright Horizons, and failed to give "full, fair, correct and clear instructions" as to the governing law for a commercial lease and a side agreement, such as the ones involved here. *Buckley* v. *Frankel,* 262 Mass. 13, 15 (1928). See *Kelly* v. *Foxboro Realty Assocs., LLC,* 454 Mass. 306, 310 (2009).

As to the contract count, the judgment is vacated, the verdict is set aside, a new judgment shall enter for Bright Horizons, and the matter is remanded to Superior Court for further proceedings for purposes of assessing Bright Horizons's damages.[6] As to the G. L. c. 93A count, the amended judgment is reversed, the finding is set aside, and the matter is remanded for a new trial consistent with this opinion.

*So ordered.*

---

[6]Sturtevant argues that Bright Horizons failed to comply with a notice provision in the lease, requiring that the lessor be provided thirty days' written notice before the lessee could take action to cure an alleged default (i.e., base building work). It is enough to say here that compliance with a notice provision is not required if it would be an empty gesture. *Shawmut-Canton LLC* v. *Great Springwater of America, Inc.,* 62 Mass. App. Ct. 330, 340 (2004). We should add that subsequent to its purchase of the property, Sturtevant had solicited the assistance of Stephen Mack, principal of Longwater, to oversee or inspect, in some way or another, aspects of the building project during the time in question. It is difficult to conceive that Sturtevant was unaware of Bright Horizons's work in December, 2005. We would expect the trial judge to sort this out on remand.