ALFRED E. SAGGESE, JR. *vs.* JAMES MICHAEL KELLEY
& others.[1]

Suffolk. October 5, 2005. - November 30, 2005.

Present: MARSHALL, C.J., GREANEY, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contract,* Compensation of attorney, Consideration, Ratification. *Frauds, Statute of. Attorney at Law,* Fee-sharing agreement, Canons of ethics.

The evidence in a civil action supported the judge's finding that an oral fee-sharing agreement between the parties, who were all attorneys, had been formed, with present consideration based on an expectation of future referrals by the plaintiff to the defendants [439]; further, such an arrangement did not violate the Statute of Frauds, G. L. c. 259, § 7 [439].

A fee-sharing agreement between attorneys was not void as against public policy or unenforceable because it violated the terms of S.J.C. Rule 3:07, Canon 2, DR 2-107 (A) (1), or Mass. R. Prof. C. 1.5 (e), where the client subsequently ratified the agreement. [439-442]

This court announced that in the future, it will construe Mass. R. Prof. C. 1.5 (e) to require that attorneys involved in a fee-sharing agreement secure a client's consent to the arrangement in writing before a referral is made. [442-443]

There was no merit to a claim of unclean hands, an equitable principle, in an action at law for breach of contract. [444]

The judge in a civil action properly denied the defendants' motion to alter or amend the judgment to limit liability to the professional corporation through which they did business, where the plaintiff had sued the defendants individually, as well as their corporation, and the evidence warranted a finding that the individual defendants were jointly and severally liable with their corporation. [444-445]

This court declined to award attorney's fees and costs for an appeal that was not frivolous. [445]

CIVIL ACTION commenced in the Superior Court Department on April 3, 2000.

The case was heard by *Janet L. Sanders,* J., and a motion to alter or amend the judgment was also heard by her.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

[1]Kathleen M. Kelley and Kelley Law Associates, P.C.

*H. Reed Witherby* for the defendants.

*Robert D. Cohan* for the plaintiff.

SPINA, J. Following a jury-waived trial, a judge in the Superior Court found the defendants James Michael Kelley, Kathleen M. Kelley, and Kelley Law Associates, P.C., liable to the plaintiff, Alfred E. Saggese, Jr., pursuant to an oral fee-sharing agreement, for one-third of the legal fees they received for professional legal services rendered to a client referred to them by Saggese. The judge also denied their motion to alter or amend the judgment, which sought relief for the Kelleys individually from a liability that they contend is an obligation of their professional corporation alone.

On appeal the Kelleys argue that the judge erred by finding that there was an enforceable oral agreement, where (1) there was no present consideration for the agreement; (2) the agreement falls under the Statute of Frauds, G. L. c. 259, § 7,[2] and thereby is unenforceable; and (3) the agreement is void and unenforceable because Saggese did not obtain the client's prior consent to the fee sharing in violation of both the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, S.J.C. Rule 3:07, Canon 2, DR 2-107 (A) (1), 382 Mass. 773 (1981),[3] and Mass. R. Prof. C. 1.5 (e), 426 Mass. 1315

---

[2] General Laws c. 259, § 7, states: "Any agreement to pay compensation for service as a . . . finder . . . shall be void and unenforceable unless such agreement is in writing, signed by the party to be charged therewith . . . . The provisions of this section . . . shall not apply to a contract to pay compensation for professional services of an attorney-at-law . . . acting in [his or her] professional capacity."

[3] Canon 2, DR2-107 of the Canons of Ethics and Disciplinary Rules Regulating the Practice of Law, S.J.C. Rule 3:07, 382 Mass. 773 (1981), states:

"Division of Fees Among Lawyers.

"(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

"(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

" . . .

"(3) The total fee of the lawyers does not exceed reasonable compensation for all legal services they rendered the client."

(1998).[4],[5] The Kelleys also argue that (4) Saggese was not entitled to relief because of an incident that they claim invokes the clean hands doctrine; and (5) the individual attorneys cannot be liable for debts of the corporate defendant through which they were openly engaged in the practice of law. We conclude that the parties entered into an enforceable fee-sharing agreement and affirm the judgment in all respects. We also decide that hereafter, in order to satisfy professional ethical requirements, lawyers who participate in a fee-sharing agreement must obtain the client's consent in writing before the referral is made.

1. *Background.* We summarize the facts found by the trial judge, and note that her findings of fact are not challenged as clearly erroneous. See Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996). See also *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 674 (1977).

Saggese is a seasoned trial lawyer specializing in criminal and personal injury work. He was admitted to practice in 1972. Kathleen Kelley was admitted to practice in 1988. James Kelley, her brother, was admitted to practice in 1992. The Kelleys were members of the same small firm in 1992. By March 1, 1996, they were members of the firm Kelley & Donovan, P.C., and on May 1, 1997, the name of the firm was changed to Kelley Law Associates, P.C.

In 1996, Saggese was looking for attorneys to lease space with him in a suite of offices at 11 Beacon Street in Boston. The Kelleys were looking for space for their firm. The parties met for the first time in late fall of 1996 and eventually executed

---

[4]Rule 1.5 (e) of the Massachusetts Rules of Professional Conduct, 426 Mass. 1315 (1998), states, in relevant part: "A division of a fee between lawyers who are not in the same firm may be made only if, after informing the client that a division of fees will be made, the client consents to the joint participation and the total fee is reasonable."

Comment [4A] to rule 1.5 (e) states that the rule is "substantively the same as former DR 2-107." *Id.*

[5]The agreement at issue began in 1997 and continued through 1999. The Canons of Ethics and Disciplinary Rules Regulating the Practice of Law were in effect in 1997. The Massachusetts Rules of Professional Conduct took effect on January 1, 1998, and apply to conduct occurring on or after that date. See part 3, *infra.*

a three-year lease in December, 1996. The tenants of the premises were Saggese and Kelley & Donovan, P.C. To facilitate the transaction, Saggese and Kelley & Donovan, P.C., entered into a real estate partnership whereby they would lease the space together but maintain separate law practices: the Kelleys as Kelley & Donovan, P.C., and Saggese under his own name.

In January, 1997, Jan Doe[6] consulted Saggese about a matter. Saggese told Doe he had little experience in the field for which Doe sought his representation, but that the Kelleys had such experience. Later that month he introduced Doe to Kathleen Kelley. On February 10, 1997, Kathleen Kelley sent Doe a written fee agreement that specified an hourly rate and a retainer. A copy of the agreement was sent to Saggese.

As of that time Saggese and Kelley had not discussed sharing fees for client referrals from Saggese. By late February or early March, 1997, Saggese had referred other clients to the Kelleys, and he made it clear that he expected a referral fee of one-third of any attorney's fees the Kelleys generated in cases he referred, including the Doe matter. The Kelleys acquiesced in this arrangement: they voiced no objection to the retroactive inclusion of the Doe matter, and they began paying Saggese one-third of fees received in cases he had referred to them. On May 6, 1997, and September 3, 1997, they sent him checks totaling $2,512.50 related to the Doe matter. The checks bore a notation written by one of the Kelleys that the payment represented referral fees. Periodically, Saggese and James Kelley would review cases that Saggese had referred, discussing referral fees paid and owed on each case, including the Doe case. The Kelleys were inexperienced and happy to get the referrals, and they did not express any objection to the arrangement.

In March, 1999, Doe owed the Kelleys more than $150,000 in fees for services rendered. In addition, Doe owed the Kelleys for expenses they incurred, which amounted to $33,253.97 by April, 1999. Doe's case consumed a substantial portion of the Kelleys' time. Frustrated by the financial burden of Doe's case, the Kelleys stopped paying Saggese one-third of whatever fees Doe would pay. Rather than attempt to renegotiate the referral

[6]A pseudonym. The matter for which Doe sought representation was impounded.

fee agreement on the Doe case, the Kelleys instead chose not to tell Saggese whenever Doe made a payment.

In the summer of 1999, Doe's case went to trial and the Kelleys were successful. They eventually obtained an order for attorney's fees and costs in the amount of $309,498, to be paid by September 30, 1999. They did not inform Saggese of the result they obtained, and were not forthcoming when he inquired about the status of the case.

On September 1, 1999, Saggese learned that the Kelleys had, on that day, received a large sum in the Doe matter. He inquired of James Kelley, who denied knowledge of the check. That same day, Kathleen Kelley telephoned Doe and discussed Saggese's expectation of receiving a referral fee. This was the first that Doe had heard about the fee-sharing arrangement. Kathleen Kelley told Doe that she would not pay Saggese if Doe objected. Doe went to the Kelleys' law office on September 22 and discussed the fee-sharing issue with Kathleen Kelley. On September 30, Doe sent a letter to Kathleen Kelley authorizing her to pay Saggese his referral fee. The Kelleys received legal fees of $272,794.50 in the Doe case. One-third of that amount ($90,931.50), less the two payments received by Saggese ($2,512.50), is $88,419.

The judge found that the parties formed an oral agreement to share legal fees from cases referred by Saggese to the Kelleys, including the Doe case. She further found that the course of conduct between the parties supported the existence of an agreement to pay Saggese a one-third referral fee. The judge rejected the Kelleys' argument that because the agreement violated Mass. R. Prof. C. 1.5 (e), it was unenforceable. She concluded that the Kelleys had not shown that there was a violation of rule 1.5 (e) because the rule does not speak to when disclosure to the client must be made, who must make the disclosure, or when consent must be given. She further concluded that even if the rule were violated, the agreement nevertheless would be enforceable because the rule was intended to protect the client from excessive fees, and here the client was not harmed because the referral fees came directly out of the Kelleys' hourly rate, which had not been adjusted upward as a result of the referral. The judge rejected the other issues raised by the Kelleys, which we will

discuss below. She ordered entry of judgment for Saggese in the amount of $88,419.

2. *Contract issues.* a. *Past consideration.* The Kelleys contend that the judge erred in finding that an oral fee-sharing agreement had been formed because it could have been based only on past consideration, which is insufficient to support a new promise. See *Greater Boston Cable Corp.* v. *White Mtn. Cable Constr. Corp.*, 414 Mass. 76, 80 (1992). In particular, they argue that the only consideration for the fee-sharing agreement in the Doe matter was Saggese's introduction of Doe to Kathleen Kelley, which preceded any discussion of a fee-sharing agreement by approximately one month, and thus could not have provided the requisite consideration. The argument, raised for the first time on appeal, has no merit.

After approximately one month into their representation of Doe, the Kelleys were made aware of Saggese's expectation of being paid a one-third fee for all referrals he made to them, including the Doe case. They not only did not object to his stated expectation of receiving a fee in the Doe case, but the judge found they manifested their assent to his proposal by paying him one-third of the fees they received in that and other cases and periodically apprising Saggese of their receipts in all cases that he had referred to them. The judge concluded they were happy to have the referral business. None of these findings is challenged as clearly erroneous. Had the issue of past consideration been raised, these findings would support a finding of present consideration based on an expectation of future referrals, and the judge was clearly inclined to such a finding.

b. *Statute of Frauds.* Contrary to the Kelleys' assertion, G. L. c. 259, § 7, providing that agreements to pay fees to a "finder" are unenforceable and void unless in writing and signed by the person to be charged, is not applicable here. An attorney who refers a client to another attorney is not a finder within the meaning of the statute, which expressly excludes a "contract to pay compensation for professional services of an attorney-at-law." G. L. c. 259, § 7. See *Gentell* v. *Hill Holiday Connors Cosmopulos, Inc.*, 55 Mass. App. Ct. 550, 553 & n.3 (2002).

3. *Public policy.* The Kelleys argue that even if there were a fee-sharing agreement, it is void as against public policy or

unenforceable because it violated the terms of DR 2-107 (A) (1), which was in effect at the time the attorney-client relationship was formed. They contend that DR 2-107 (A) (1) required Saggese to make the disclosure and obtain Doe's consent to the fee sharing, see *Matter of Kerlinsky*, 406 Mass. 67, 74 (1989), cert. denied, 498 U.S. 1027 (1991) (hiring attorney had duty to disclose fee-sharing agreement and obtain client consent), and to obtain such consent before making the referral to the Kelleys. They further contend that the judge erred by applying Mass. R. Prof. C. 1.5 (e), which did not become effective until nearly one year after the attorney-client relationship began and which they say is more lenient than DR 2-107 (A) (1).

When deciding whether a violation of statute or a regulation renders a contract void as against public policy, we generally consider such factors as "what was the nature of the subject matter of the contract; what was the extent of the illegal behavior; was that behavior a material or only an incidental part of the performance of the contract (were 'the characteristics which gave the plaintiff's act its value to the defendant . . . the same as those which made it a violation . . . of law'); what was the strength of the public policy underlying the prohibition; how far would effectuation of the policy be defeated by denial of an added sanction; how serious or deserved would be the forfeiture suffered by the plaintiff, how gross or undeserved the defendant's windfall" (footnotes omitted). *Town Planning & Eng'g Assocs.* v. *Amesbury Specialty Co.*, 369 Mass. 737, 745-746 (1976). This analysis generally is applicable to the circumstances here.

The contract in question is a fee-sharing agreement between lawyers. There is nothing about the subject matter of the contract that is illegal or contrary to public policy. That is, neither DR 2-107 (A) (1) nor rule 1.5 (e) prohibits fee-sharing agreements. Contrast S.J.C. Rule 3:05, 382 Mass. 762 (1981) (no contingent fee agreement shall be made in respect of procuring acquittal or favorable disposition in criminal case, or in respect of procuring of divorce, annulment of marriage, or legal separation); Mass. R. Prof. C. 1.5 (d), 426 Mass. 1315 (1998) (substantially similar). We will reference both rules, because although DR 2-107 (A) (1) was in effect at the time the fee-sharing agree-

ment was formed, rule 1.5 (e) arguably governed the conduct of the lawyers as of January 1, 1998.

Even if there had been a violation of DR 2-107 (A) (1) or rule 1.5 (e), a point we need not decide, the Kelleys may not rely on the violation to absolve them of their contractual obligation to Saggese. The rule, and it is immaterial which version applies, was intended to protect clients from unreasonable fees. The Kelleys acknowledge this in their brief. Because the rule was not intended to protect a person in the Kelleys' position, it may not serve as the basis of their defense to Saggese's contract claim. Cf. *Fishman* v. *Brooks*, 396 Mass. 643, 649 (1986) ("As with statutes and regulations . . . if a plaintiff can demonstrate that a disciplinary rule was intended to protect one in his position, a violation of that rule may be some evidence of the attorney's negligence"); *Beecy* v. *Pucciarelli*, 387 Mass. 589, 597 (1982) (plaintiff did not state claim of abuse of process by adversary's attorney based on attorney's negligent representation of his client or violations of disciplinary rules). By contrast, as the intended beneficiary of the rule, Doe could have invoked the rule to challenge the fee-sharing agreement as well as the fees. See *Cambridge Trust Co.* v. *Hanify & King Prof. Corp.*, 430 Mass. 472 (1999) (contingent fee agreement challenged); *Guenard* v. *Burke*, 387 Mass. 802 (1982) (same). That has not occurred. Between lawyers, a fee-sharing agreement that fails to comply with the disciplinary rules is not necessarily unenforceable. Neither lawyer should be permitted to charge the other with an impropriety in which both participated, especially where the rule was intended for the protection of the client. When the Kelleys were apprised of and acquiesced in Saggese's expectation of a referral fee, they did nothing to alert Doe of the arrangement or to obtain Doe's consent to it. Nor did they inquire of Saggese whether he had notified Doe or obtained Doe's consent. They should not benefit from a failure to protect their own client. The policy behind the rule, protection of the client against unreasonable fees through prior disclosure and client consent, is adequately observed by permitting clients to invoke the rule to challenge the fee charged or paid, and through the disciplinary process when the actual division of a fee is made in violation of the rule. See *Matter of Kerlinsky, supra.*

Here, it is significant that Doe ultimately consented to the fee-sharing agreement. Although Doe's consent came toward the end of the attorney-client relationship, the beneficiary in a fiduciary relationship may ratify conduct that otherwise would constitute a breach of fiduciary duties, provided the requisite disclosure has been made. See *Puritan Medical Ctr., Inc.* v. *Cashman*, 413 Mass. 167, 172 (1992), citing *Durfee* v. *Durfee & Canning, Inc.*, 323 Mass. 187, 203 (1948). Doe could, and did, ratify the fee-sharing agreement by consenting thereto on September 30, 1999, after disclosure of the fact of the agreement, which is the level of disclosure required under DR 2-107 (A) (1). Ratification is not the preferred method to obtain a client's consent to a fee-sharing agreement, but it is adequate.

We conclude that the fee-sharing agreement was not void as against public policy or unenforceable for failure to comply with the applicable fee-sharing rule prior to the client referral, and the judge did not err in so ruling.

4. *Future fee-sharing agreements.* Although we have concluded that a client may ratify an oral fee-sharing agreement between lawyers, our holding does not resolve the difficulties inherent in former DR 2-107 (A) (1) or the current Mass. R. Prof. C. 1.5 (e), which, as noted in note 4, *supra*, are "substantively the same." Mass. R. Prof. C. 1.5 comment [4A], 426 Mass. 1315 (1981). When this court considered adopting the American Bar Association Model Rules of Professional Conduct in the 1990's, a few select rules were changed at the request of the organized bar. One of those was the current rule 1.5 (e), which is a significant departure from the national practice, but which had been, and remains, a time-honored practice in this State. See H.P. Wilkins, The New Massachusetts Rules of Professional Conduct: An Overview, 82 Mass. L. Rev. 261, 261-262 (1997). There was no response to our request for amicus briefs on this issue. We nevertheless address the judge's observations that, at least for professional ethical purposes, rule 1.5 (e) does not speak to when disclosure to the client must be made, who must make the disclosure, or when consent must be given. Former DR 2-107 (A) (1) at least implied that disclosure had to be made and client consent obtained at the time of the referral, as the client had to consent to the "*employment* of the

other lawyer after a full disclosure that a division of fees will be made" (emphasis added). Current rule 1.5 (e) is silent on the issue.

Fee agreements, whether between the attorney and the client directly or fee-sharing agreements between lawyers that require client consent, pose special problems when made or modified after representation has begun. "A client might accept such a contract because it is burdensome to change lawyers during a representation. A client might hesitate to resist or even to suggest changes in new terms proposed by the lawyer, fearing the lawyer's resentment or believing that the proposals are meant to promote the client's good. A lawyer, on the other hand, usually has no justification for failing to reach a contract at the inception of the relationship or pressing need to modify an existing contract during it." Restatement (Third) of the Law Governing Lawyers § 18 comment e, at 156 (2000). Generally, the lawyer must show that the client was not pressured to accede to a mid-representation fee change "to avoid the problems of changing counsel, alienating the lawyer, missing a deadline or losing a significant opportunity in the matter, or because a new lawyer would have to repeat significant work for which the client owed or had paid the first lawyer . . . . Although fairness and reasonableness to the client is the issue, the strength and legitimacy of the lawyer's need for the terms of the late contract are relevant to that issue." *Id.* at 156-157.

These problems are avoidable in fee-sharing situations if the referring lawyer, who usually is in the best position to secure compliance with rule 1.5 (e), is required to disclose the fee-sharing agreement to the client before the referral is made and secures the client's consent *in writing*. The rule will be construed to require this in fee-sharing agreements that are formed after the issuance of the rescript in this decision. Although the primary responsibility for compliance will fall on referring lawyers, lawyers to whom referrals are made are not absolved of all responsibility, and should confirm, before undertaking such representations, that there has been compliance with rule 1.5 (e). We emphasize that although failure to comply with the rule may not necessarily render a contract unenforceable between lawyers, it may subject both lawyers to disciplinary action upon division of a fee.

5. *Unclean hands.* There is no merit to the Kelleys' claim of unclean hands concerning the circumstances in which Saggese learned of the large amount of money the Kelleys received on September 1, 1999. It seems that Doe's opponent dropped off the check at the Kelleys' law office. On his way out he met Saggese and mentioned that fact to him. When confronted about how he learned about the check, Saggese initially lied, but later disclosed the truth. There was no evidence that any harm came of this, as the Doe representation largely had been concluded at the time. In any event, the principle relied on by the Kelleys is an equitable principle, and generally has no application to an action at law for breach of contract. Cf. *Srebnick* v. *Lo-Law Transit Mgt., Inc.*, 29 Mass. App. Ct. 45, 49-50 (1990) (laches is generally not available as defense in legal claim).

6. *Motion to alter or amend the judgment.* The Kelleys contend that they may not be held liable for the debts of their professional corporation, through which they were engaged in the practice of law, and for that reason the judge erred in denying their motion to alter or amend the judgment. See *Porshin* v. *Snider*, 349 Mass. 653, 655 (1965), quoting Restatement (Second) of Agency § 320 & comment a (1958) ("Unless otherwise agreed, a person making or purporting to make a contract for a disclosed principal does not become a party to the contract"). Their reliance on G. L. c. 156B, § 38, made applicable to professional corporations by G. L. c. 156A, § 6 (*a*), has no meaning, as § 38 was repealed by St. 1986, c. 186, § 7. To the extent that their reliance instead is on G. L. c. 156, § 38, that section has not been made applicable to G. L. c. 156A by any provision in that chapter. See G. L. c. 156, § 2.

The Kelleys ignore the fact that Saggese sued them individually, as well as their corporation. The thrust of the claim was that he had a fee-sharing agreement with all three defendants. Significantly, the fee agreement between Doe and the Kelleys identified the parties thereto as Doe and "Kathleen M. Kelley, individually and Kelley & Donovan, P.C." The Kelleys had sent a copy of this agreement to Saggese. This fee agreement, the testimony of the witnesses, and Saggese's theory of individual and corporate liability warranted a finding that the individual attorneys were jointly and severally liable with their profes-

sional corporation on a fee-sharing agreement with Saggese. In her memorandum of decision on the motion to alter or amend judgment, the judge noted that at no time during the trial did the individual defendants attempt to show that they acted in a representative capacity only. Rather, they argued that there was no agreement at all, and thereby waived the issue. There was no error.

7. *Attorney's fees.* We decline to award attorney's fees and costs, as requested by Saggese. There is nothing frivolous about this appeal.

*Judgment affirmed.*