STATE OF MAINE  
CUMBERLAND, ss

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO. CV-12-0075,  
*OAW - CUM - 7/30/2013*

RICHARD D. TUCKER, ESQ.  
and TUCKER LAW GROUP,

      Plaintiff

v.

DECISION AND ORDER  
(*Braley* case #1[1])

DANIEL G. LILLEY, Esq.,  
and DANIEL G. LILLEY LAW  
OFFICES, P.A.,

and

JOHN FLYNN, III, Esq.,

      Defendants

STATE OF MAINE  
Cumberland, ss. Clerk's Office

JUL 30 2013

RECEIVED

## INTRODUCTION

Pending is Daniel Lilley and Daniel G. Lilley Law Office's ("Lilley") motion for summary judgment in this action regarding the division of $1,240,000 in attorneys' fees received pursuant to a contingent fee in the matter of *Estate of Thomas E. Braley, Sr. v. Eastern Maine Medical Center and Lawrence Nelson, D.O.* ("*Braley* action or lawsuit"). Richard Tucker ("Tucker") was the referring attorney to John Flynn ("Flynn") while he was practicing with Troubh Heisler ("TH"). In the pending action, Tucker filed a two-count complaint seeking a declaratory judgment and alleging breach of contract to collect

---

[1] This is the first decision and order in a pair of decisions relating to the attorneys' fees contested following the award of attorneys' fees in the *Braley* lawsuit. The second decision is *Troubh Heisler, PA v. Daniel G. Lilley, P.A. and John Flynn*, CUMSC-CV-2012-00103 (Me. Super. Ct., Cumb. Cty., July 30, 2013)(Wheeler, J.). There is a third case between Lilly and Flynn, also concerning attorneys' fees related to the *Braley* lawsuit.

his share of the attorneys' fees. Tucker alleges that the defendants breached a 2006 agreement to divide the fee in the *Braley* lawsuit so that Tucker would ~~received~~ receive 25% of the total attorneys' fees awarded.

Flynn filed a cross-claim against Lilley with a number of allegations, all of which relate to his working relationship with Lilley and none of which are relevant to the pending motions for summary judgment.[2]

Lilley moved for summary judgment on the grounds that public policy prohibits enforcement of any referral fee agreement because it is not in writing and the client did not approve of the fee arrangement.

Tucker also moved against Flynn and Lilley for summary judgment on the grounds that there are no material issues of fact regarding the 2006 agreement to split the fee with Tucker. Tucker alleges that his agreement with Ms. Braley and Flynn fully complied with the then applicable Maine Bar Rules.

STATEMENT OF UNDISPUTED FACTS

The parties' statements of material facts and the applicable rules of summary judgment practice permit the court to find the following facts as undisputed.

On June 13, 2011, a jury in Penobscot County Superior Court returned a verdict for Paula Braley, as personal representative of the Estate of Thomas Braley, in the amount of $6,711,000.00. There were post-trial motions that delayed the finality of the matter. The *Braley* action did not resolve until a settlement was reached by the parties in

---

[2] Flynn alleges in his cross-claim against Lilley, breach of contract in violation of a memorandum of understanding ("MOU") and a memorandum of agreement ("MOA") (Count I), breach of a fiduciary obligation to act in good faith in carrying out distribution of attorneys' fees generated by Flynn cases (Count II), unjust enrichment for unpaid services provided by Flynn to Lilley (Count III) and quantum meruit for claiming all *Braley* fees when he did not earn any pursuant to the MOU and MOA (Count IV).

2

April 2012 and in an amount substantially less than the jury verdict. (FOSMF, ¶ 29.) The total attorneys' fees awarded in the amount of $1,240,000.00 are in an escrow account. Pursuant to a court order and stipulation entered into on or about April 13, 2012 by the Estate of Thomas Braley, Sr., Lilley, Flynn, TH, and Tucker, the attorneys' fees payable from the settlement in the *Braley* action were placed in a special escrow account until the division of fees has been ruled upon and all appeals therefrom exhausted. [3]

Following the death of her husband in May 2005 at Eastern Maine Medical Center, Paula Braley was appointed personal representative of her husband's estate. Ms. Braley first consulted in 2005 with Tucker in Bangor, Maine. (LSMF, ¶9.) Later, in 2006, Tucker consulted with Flynn about referring the case to him for primary representation. (FASMF, ¶3.) Flynn agreed to take the matter and Tucker and Flynn agreed to divide the fee; Tucker would receive 25% of any contingent fee earned in the *Braley* lawsuit because, in part, Tucker would remain involved in the litigation. (FOSMF, ¶10, FASMF. ¶ 4, TOSMF. ¶11.)

A meeting was held on September 27, 2006 at the Tucker law firm attended by Tucker, Flynn, Ms. Braley and her brother, Randy Dicker. (FOSMF, ¶ 10, FASMF, ¶ 4.) Flynn was a member of the Troubh Heisler law firm when this meeting occurred. (FOSMF, ¶6.) At the meeting, Flynn reviewed with Ms. Braley the terms of his firm's Attorney-Client Contingent Fee Agreement in detail, explained the fee-sharing arrangement with Tucker to divide the fee in this case, and further explained that she would be charged only one fee, the fee stated in the contingent fee agreement, to which Ms. Braley agreed. (FOSMF, ¶¶10, 11, 14, FASMF, ¶ 4.) Flynn told her she did not need to agree to it right then and gave her two original copies of the Troubh Heisler Attorney-

---

[3] The parties could, of course, agree to a distribution of the attorneys' fees.

Client Contingent Fee Agreement that they had reviewed. Flynn signed both copies of the Agreement. (FOSMF, ¶ 10.) Within minutes of the end of the meeting, Ms. Braley's brother returned to the Tucker office and gave Flynn a copy of the Fee Agreement that Ms. Braley had signed, saying that she didn't need to think about it any longer and wanted Flynn to represent her and the Estate. (LSMF, ¶11 and Ex. D, FOSMF, ¶ 10.) An unsigned copy of the Troubh Heisler Attorney-Client Contingent Fee Agreement is marked as Ex. D to LSMF, ¶29, FOSMF, ¶¶29, 30 and 31. The original, signed agreement has not been produced in this lawsuit or in any of the other lawsuits regarding *Braley* fees.

At the September 27, 2006 meeting. Flynn and Tucker reviewed the contingent fee agreement with Ms. Braley. They explained that attorneys Flynn and Tucker would share attorney's fees generated from successful litigation, and she would not be charged separately for two attorneys involved. Ms. Braley agreed and consented to the fee agreement and the fee division between the attorneys and signed the contingent fee agreement. (FOSMF, ¶¶34, 35 and FASMF, ¶¶4, 9 and Exhibit 2, ¶5.)

Flynn resigned from TH and moved to Lilley's office on or about January 31, 2009. (LSMF, ¶¶7, 8, FASMF, ¶6.) At the time of Flynn's relocation, Ms. Braley decided to move her case along with Flynn from Troubh Heisler to Lilley Law Offices and her case went with Flynn. (LSMF, ¶ 13 and Ex. F, FASMF, ¶ 6.) At the time Flynn explained to Ms. Braley that any fees owed to TH or Lilley would be paid out of the contingent fee payable to him, as it was with Tucker. (FOSMF, ¶¶34, 35 and Ex. 2, ¶10, FASMF, ¶¶4, 9, TOSMF, ¶13.) Another fee agreement was signed with Lilley's office. (LSMF, ¶ 36, FOSMF, ¶¶36-37.)

4

Flynn successfully tried the *Braley* action and after verdict and with Court approval, the attorneys received and placed in escrow the sum of $1,240,000 representing the fee paid by the Plaintiff in the *Braley* action. (LSMF, ¶17, FASMF, ¶ 7.)

By May 2011, Ms. Braley remarried, and her new legal name is Paula DeKeyser. In March 2012, Paula (Braley) DeKeyser executed an affidavit in support of the Flynn Law Office's petition for payment of attorneys' fees. (FOSMF ¶35 and Ex. 2.) In Ms. Braley's affidavit she confirmed that Flynn reviewed with her his firm's Attorney-Client Contingent Fee Agreement in detail, explained the fee sharing arrangement with Tucker, and explained that she would not be charged separately for two attorneys' involvement. Ms. Braley agreed and consented to the fee agreement and the fee division between the attorneys and signed the TH contingent fee agreement. (FOSMF, ¶¶34-35 and Ex. 2, ¶5.)

The *Braley* file has not always been in Flynn's possession. It was in the sole possession of Troubh Heisler after Flynn left that office and prior to Ms. Braley's letter requesting transfer of her file. Similarly, the file was in the sole possession of the Lilley law office following Flynn's departure and until Ms. Braley's letter requesting transfer of the files to the Flynn Law Office. (FASMF, ¶ 17.)

When Flynn moved to Lilley's Law Office, Flynn brought with him a number of cases. (FASMF, ¶10.) Lilley and Flynn signed a Memorandum of Understanding ("MOU") on January 17, 2009. Section III of the MOU addressed cases that Flynn brought with him to Lilley's Law Office and in which he was the originating and the representing attorney before his employment with Lilley. Section III states in pertinent part,

> For any such cases Mr. Flynn brings with him to Daniel G. Lilley Law Office, it is also expressly acknowledged and understood that he may owe a portion of the

5

attorneys' fees generated by his representation to Troubh Heisler, P.A., and/or referring attorneys.

The MOU entitles Lilley to receive a portion of the attorneys' fees from cases Flynn brought with him, including the *Estate of Braley*, commensurate with the involvement of Lilley, the other lawyers and staff in his office and any financial investment in the case. (FASMF, ¶ 16 and Ex. 4.)

Ms. Braley executed a contingent fee agreement with Flynn and Daniel G. Lilley Law Offices, P.A..[4] Ms. Braley understood that any fees owed to either TH or Tucker or the Lilley Law Offices would be paid out of the contingent fee payable to Flynn. (FOSMF, ¶¶34-35 and Ex.2, ¶10 .) Flynn subsequently left Lilley's office effective July 1, 2011 and opened his own practice as Flynn Law Office. Ms. Braley again determined to follow Flynn to his new practice and asked that her file be transferred to Flynn's office. (FASMF, ¶ 13.) Ms. Braley executed on January 23, 2012 a contingent fee agreement with the Flynn Law Office. (LSMF, ¶32.) The contingent fee agreement allows for payment of 40% of Ms. Braley's gross recovery as payment for attorneys fees. Ms. Braley understood and agreed that any portion of attorneys fees owed to predecessor attorneys (whether by contingent fee agreement or fee division by the attorneys) involved with the case would be paid from the total attorneys fees paid to the Flynn Law Office and she would not be separately or additionally responsible for payment of those attorneys' fees. (LSMF, ¶32 and Ex. E, FOSMF, ¶¶ 32 – 35.) Flynn, the Tucker Law Group, Troubh Heisler, PA and Daniel G. Lilley Law Offices, P.A., claim entitlement to all or a portion of the 40% contingent fee.

---

[4] There is a dispute between Flynn and Lilley about which is the operative contingent fee agreement, but that dispute does not affect Tucker's claim.

6

1.    Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). An issue of "fact exists when there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Inkell v. Livingston*, 2005 ME 42, ¶ 4, 869 A.2d 745 (quoting *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178).

In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. Rule 56(h) requires a party that is opposing a motion for summary judgment to support any qualifications or denials of the moving party's statement of material facts with record citations.[5] *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 6 n.5, 770 A.2d 653. "All facts not properly controverted in accordance with this rule are deemed admitted." *Rogers v. Jackson*, 2002 ME 140 ¶ 7, 840 A.2d 379 (*citing* M.R. Civ. P. 56(h)(4)).[6]

---

[5] Rule 56(h)(2) provides,

> The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation as required by paragraph (4) of this rule.

In this case, the parties attempted, on occasion, to rebut opposing parties' statement of material facts with conclusory allegations and arguments and without support in the record. This failure simplified the court's finding of uncontroverted facts.

[6] The court rejects Lilley's argument that Rule 56 requires more than reliance on the pleadings, particularly where TH tries to bind Lilley on the basis of an answer of Flynn's. Rule 56(e) provides,

2.    2006 Contingent Fee Agreement

Lilley contends that because no original signed written fee agreement has been produced, there is no enforceable 2006 fee agreement. He argues the best evidence rule requires production of the original contract. On this issue, there is no genuine issue of material fact regarding the execution of a contingent fee agreement on September 27, 2006 between Flynn and Braley and another agreement among Flynn, Tucker and Ms. Braley that assured Ms. Braley that there would be only one contingent fee agreement and out of any fee earned on the *Braley* action, Tucker would receive 25% of the gross fee.

Lilley has not disputed the terms of the Troubh Heisler Contingent Fee Agreement with Ms. Braley. He argues that best evidence rule prevents summary judgment. No party has been able to produce the original Flynn(TH) and Ms. Braley contingent fee agreement; yet, there is no dispute that they signed such an agreement on September 27, 2006. Flynn admits that Ex. D, attached to Lilley's statement of material facts is a copy of the agreement that he and Ms. Braley signed on that date.

The fact that the original September 27, 2006 contingent fee agreement has not been produced does not create a genuine issue of fact. Flynn, Tucker and Ms. Braley have all stated that Paula Braley signed the TH Contingent Fee Agreement at a meeting that took place at Tucker's office on September 27, 2006. There is no dispute regarding the execution of the 2006 agreement. This is precisely why M.R.E.1004(I) (originals lost or

---

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of that party's pleading, but must respond by affidavits or as otherwise provided in this rule, setting forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

8

destroyed) and M.R.E. 1004(3) (original in control of opponent) exist. *See also Titcomb v. Saco Mobile Home Sales*, 544 A. 2d 754 (Me. 1988) (where neither party was able to produce signed contracts, oral evidence properly admitted to establish its terms.)

Turning to the agreement to split fees with Tucker, even though the September 27, 2006 agreement regarding Tucker was not reduced to writing, the oral agreement to split fees is fully enforceable. Maine Bar Rules 3.3 and 8, which remained in effect until August 1, 2009, when the Rules of Professional Conduct became effective, required contingent fee agreements to be in writing and to contain certain matters. The contingent fee agreement signed by Flynn and Braley complied fully with Maine Bar Rule 3.3 and 8. Maine Bar Rule 3.3(d) permitted division of attorneys' fees with another lawyer who is not a partner or associate of the lawyer's firm if the client after full disclosure consents to the employment of the other lawyer and to the terms of the division, and the total fee does not exceed reasonable compensation for all legal services they render to the client. There was no requirement in the rules for fee division to be confirmed in writing. For the first time in August of 2009, the Rules of Professional Conduct governing the division of a contingent fee required that the employment of the referring attorney and the terms of the division be "confirmed in writing." M.R.Prof. Conduct 1.5(e)(2).

There was no requirement that an agreement to divide a fee be confirmed in writing in 2006, nor was there any requirement that the division of fees be included in the contingency fee agreement. A comparison of Bar Rule 3.3(d)(1) and M.R.Prof. Conduct 1.5(e)(1) makes this clear. The language of the current rule tracks the language of the old rule precisely. The new rule then specifically *adds* the requirement that the terms for the division of fees be "confirmed in writing." M.R.Prof.Cond. 1.5(e)(1). The Rules of

9

Professional Conduct also included for the first time a specific definition of what is meant by "confirmed in writing." *See* M.R.Prof. Conduct 1(b). The definition, in turn, refers to the definition of informed consent. Reading Rule 3.3 and Rule 1.5 together, it is obvious that in 2006 there was no requirement that an agreement to divide a fee be "confirmed in writing." Nor is there anything in the new rules adopted in 2009 that invalidated fee agreements in existence prior to that date. Flynn and Tucker fully explained to Ms. Braley the fee division agreement and that she would only pay one fee pursuant to the contingent fee agreement. Ms. Braley fully understood this arrangement and agreed to fee agreement and the fee division.

Because there is no disputed issue of material fact with regard to the terms of the 2006 agreement under which Tucker asserts his right to fees, the 2006 agreement met all requirements in existence at the time it was made, and Ms. Braley consented to the terms of the fee division with Tucker, the court upholds Tucker's right to 25% of the total fee earned in the *Braley* lawsuit and grants summary judgment to Tucker on both Counts I and II of the Complaint. There is no dispute that full disclosure and informed consent existed when the September 27, 2006 agreement to share the fee occurred. All three parties to the transaction, including Flynn, Tucker and Ms. Braley have consistently described the meeting that preceded the execution of the Contingent Fee Agreement and the agreement to divide the fees between Flynn and Tucker.

3.    Public Policy Argument

Lilley argues that the agreement to divide the attorneys' fees earned in the *Braley* case raises a public policy issue. However, the requirements for the division of attorneys' fees were set forth in Bar Rule 3.3. Those requirements under the former rule were first,

10

"[t]he client after full disclosure, consents to employment of the other lawyer and to the terms for the division of fees" and second, the total fee must not exceed reasonable compensation for all legal services rendered.

No issue has been raised concerning the reasonableness of the fee. The Maine Health Security Act prescribes a procedure under which attorneys may petition the court to review the reasonableness of fees in malpractice actions. 24 M.R.S.A. §2961(3). On April 12, 2012, Flynn filed a petition for payment of attorneys' fees. (FOSMF ¶34-35.) Justice Anderson, who presided over the trial, approved the fee. Justice Anderson's decision was supported by the affidavit of Paula Braley, in which she affirmatively requested that the court award the fee sought by Flynn. No one involved in the current cases before this court challenged Justice Anderson's fee award.

When Flynn moved from Troubh Heisler to the Lilley firm in February 2009, both Flynn and Lilley knew of the two referral fees that were owed in the *Braley* matter. (FASMF, ¶11 and Ex.4.)[7] The first was owed to Tucker based pursuant to the 2006 agreement. (TOSMF, ¶ 13.) The second was owed to Troubh Heisler under the Memorandum of Agreement requiring payment of a "referral fee" in the amount of twenty percent of the total fee in the *Braley* lawsuit. (FASMF, ¶16 and Ex. 4, TSMF, ¶

[7] Lilley's argument that he did not agree to divide the contingent fee with other attorneys is not responsive to Flynn's material statement of facts (FASMF, ¶¶11, 16.) that Lilley knew of the referral fees owed in the *Braley* action. The fact that Lilley may not have read Flynn's e-mail, dated January 29, 2009, is not a proper response, particularly in light of the prior Memorandum of Understanding, dated January 17, 2009, concerning Flynn's employment, which expressly acknowledges in the second paragraph of Section III, that Flynn may owe a portion of the attorney's fees generated by his prior representation to TH and/or referring attorneys. Also, Lilley himself says the Memorandum of Agreement, dated February 5, 2009, superseded any prior statement, but even that document concerning the sharing of fees among Lilley, Flynn and Toubh Heisler expressly provides for a referral fee to TH of 20% of the total fees received by Flynn and/or Lilley in the *Braley* case. (TASMF, ¶13, and Lilley Dep. Ex. 5.) Lilley's claim that he did not agree to or understand that there were other attorneys owed a portion of the contingent fee award in the *Braley* case is nonresponsive.

11

13.) These agreements to divide the contingent fee were reached prior to the effective date of Maine Rule of Professional Conduct 1.5(e)(1). Any contingent agreement signed after August 1, 2009, was required to meet the requirements of the new rule. But the prior existing agreements continue in full force and effect.

Tucker is entitled to summary judgment regardless of the outcome of the fee dispute between Lilley and Flynn. In January 2009, before Flynn accepted employment at the Lilley firm, Lilley was aware that a referral fee was owed to a referring attorney in the *Braley* case. (FASMF, ¶11.) On September 15, 2010 while employed by the Lilley office, Flynn wrote to Tucker confirming that Tucker was entitled to a twenty-five percent contingent fee realized from the *Braley* case. (TASMF, ¶45.)

Lilley now claims that the referral fee is the obligation of either Troubh Heisler or Flynn. Lilley argues that Flynn did not have the authority to enter into a binding agreement with Tucker. The dispute between Lilley and Flynn about the scope of Flynn's authority has no bearing on Tucker's motion for summary judgment. It is undisputed that for a period of several years, from 2005 to 2012, Tucker was actively involved in the *Braley* case. (TASMF, ¶¶ 38-39.) It is also undisputed that in 2006 and again in 2010 Flynn promised to pay Tucker twenty-five percent of any contingent fee earned in the *Braley* case. (TOSMF, ¶11, TASMF, ¶45.) The client, Ms. Braley, agreed to the fee sharing between Flynn and Tucker.

Lilley fails to comprehend that the basic premise of Bar rules governing fee agreements were intended to protect clients. The Massachusetts Supreme Judicial Court rejected a claim that the unwritten fee sharing agreement was void as against public policy or unenforceable because it violated Massachusetts bar rules. *Alfred E. Saggese,*

12

*Jr. v. James Michael Kelley, et al.*, 445 Mass. 434, 837 N.E.2d 699 (Ma. 2005). In

*Saggese*, the Massachusetts court concluded,

> Even if there had been a violation of [Bar Rules], a point we need not decide, the Kelleys may not rely on the violation to absolve them of their contractual obligation to Saggese. The rule, and it is immaterial which version applies, was intended to protect clients from unreasonable fees. . . . Because the rule was not intended to protect a person in the Kelleys' position, it may not serve as the basis for their defense to Saggese's contract claim. By contrast, as the intended beneficiary of the rule, [the client] could have invoked the rule to challenge the fee sharing agreement as well as the fees. That has not occurred. Between lawyers, a fee sharing agreement that fails to comply with the disciplinary rules is not necessarily unenforceable. Neither lawyer should be permitted to charge the other with an impropriety in which both participated, especially where the rule was intended for the protection of the client.

445 Mass. at 441, 837 N.E.2d at 704-05 (citations omitted). Other courts have rejected

the public policy argument on similar grounds. *See Freeman v. Mayer*, 95 F.3d 569 (7th

Cir. 1996)("[T]he clients agreed to the joint representation and worked with both lawyers.

Thus, while there may have been a technical violation of the rule, it was no more than

that, and the clients, for whose benefit the rule exists, were fully protected." 95 F.3d at

575.); *Corvette Shop & Supplies, Inc. v. Coggins*, 779 So2d 529 (Fla. 2000)(Bar Rules

requiring written contingent fee agreement are intended to protect the client, and cannot

be asserted to shield a non-prevailing party from the payment of attorney's fees).

The cases relied on by Lilley are inapposite to this case. Those cases are based on

the particular jurisdiction's rules governing contingent fee agreements and division of

fees. None of the cases cited by Lilley had a rule like Maine Bar Rule 3.3(d). In *Holstein

v. Grossman*, 616 N.E.2d 1224 (Ill. App. Ct. 1993), the court held that an oral agreement

to divide attorneys' fees is unenforceable as against public policy. But the Illinois court

did so because Rule 2-107 of the Illinois Code of Professional Responsibility requires

that a division of fees among lawyers is only permitted where "the client consents in a

13

writing signed by him to employment of the other lawyer, which writing shall fully disclose: (a) that a division of fees will be made, (b) the basis upon which the division will be made, including the economic benefit to be received by the other lawyer as a result of the division, and (c) the responsibility to be assumed by the other lawyer for performance of the legal services in question. . ." *Holstein*, 616 N.E.2d at 1233. Because the client never consented in writing, the *Holstein* court upheld the right of the client to a signed writing because it protected the client's right to an attorney of his choosing. *Id.* at 1234. Cases cited by Lilley in other jurisdictions are to the same effect. Maine's Rule 3.3 contained no requirement that a division of fees be set forth in writing in 2006. And, as the court has stated before, the client approved of the fee sharing between Flynn and Tucker.

The court finds that it is undisputed that Flynn, Tucker and Braley agreed that any contingent fee earned in the *Braley* lawsuit would be divided with 25% paid to Tucker. Nothing that happened after September 27, 2006 altered the terms of that agreement. Where there is no challenge to the reasonableness of the fee, and Braley expressly consented to the division of the fee between Tucker and Flynn, this court concludes that the undisputed 2006 fee division agreement in favor of Tucker shall be enforced

The entry is:

1. Lilley's motion for summary judgment is DENIED;

2. Tucker's motion for summary judgment on Counts I and II of the Complaint is GRANTED in the amount of $310,000, plus costs and interest.

Date: July 30, 2013

Joyce A. Wheeler, Justice

14

Richard D. Tucker Esq and Tucker Law Group-Julian Sweet Esq
Daniel G Lilley Esq and Daniel G Lilley Law Offices PA-Walter McKee Esq/James Billings Esq
John Flynn III Esq-Mark Franco Esq